Entered: October 1st, 2022
Signed: October 1st, 2022



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

In re:

MICAL R. TUCKER,

      Debtor.

Case Number:  21-16213-MCR
(Chapter 13)

MICAL R. TUCKER,

      Plaintiff,

v.

CHRISTOPHER BRUSZNICKI,

      Defendant.

Adversary Number:  21-00247-MCR

<u>MEMORANDUM OPINION</u>

In this adversary proceeding, Plaintiff Mical R. Tucker  (the "<u>Debtor</u>") filed a three-count complaint seeking to avoid the transfer of his interest in real property as a preferential and fraudulent transfer.  Defendant Christopher Brusznicki (the "<u>Defendant</u>") purchased a tax sale certificate relating to the property, and the state court presiding over the tax sale proceeding issued an order foreclosing the Debtor's right of redemption.  The outcome of the Debtor's claims will

be determined by the resolution of two legal questions.  First, in a Maryland tax sale proceeding, does the transfer of a debtor's interest in property occur, for purposes of Sections 547 and 548 of the Bankruptcy Code, when a tax sale certificate is purchased or when the state court enters an order foreclosing the debtor's right of redemption?  Second, does the United States Supreme Court's decision in *BFP v. Resolution Tr. Corp.*, 511 U.S. 531 (1994), which held that the price paid at a foreclosure sale conducted in accordance with state law conclusively determines the value of the property, apply in a Maryland tax sale proceeding?  Both of these questions present issues of first impression in this jurisdiction.

For the reasons discussed below, the Court determines that, for purposes of Sections 547 and 548 of the Bankruptcy Code, the transfer of the Debtor's interest in the real property occurred when the state court foreclosed the Debtor's right to redeem the property.  The Court also determines that *BFP*, determined in the context of a mortgage foreclosure, does not apply to causes of action brought under Sections 547 and 548 of the Bankruptcy Code when the transfer occurred in a tax sale proceeding.  There are no material facts in dispute, and the Court determines that the Debtor is entitled to judgment as a matter of law on Counts I and II and the Defendant is entitled to judgment as a matter of law on Count III.  Accordingly, the Court grants summary judgment in favor of the Debtor on Counts I and II of the Complaint and grants summary judgment in favor of the Defendant on Count III of the Complaint.

I.    PROCEDURAL POSTURE

On December 1, 2021, the Debtor filed a Complaint to Avoid Preferential Transfer [Dkt. No. 1] (the "Complaint") against the Defendant.  The Complaint seeks to avoid the transfer of the Debtor's interest in the property known as 3325 Huntley Square Drive, Unit T-2, Temple Hills, MD 20748 (the "Property") to the Defendant pursuant to a tax sale and resulting Order Foreclosing

Rights of Redemption (the "Redemption Order") entered by the Circuit Court for Prince George's County, Maryland (the "State Court"). The Defendant filed an Answer to the Complaint on January 14, 2022 [Dkt. No. 7]. The Debtor filed a Motion for Summary Judgment on January 21, 2022 [Dkt. No. 8] (the "Motion"). The Defendant filed a Motion in Opposition to Plaintiff's Motion for Summary Judgment and Counter Motion for Summary Judgment on February 10, 2022 [Dkt. No. 9] (the "Counter-Motion"). This Court held a hearing on February 22, 2022, to consider the Motion and the Counter-Motion.

II.    FACTUAL BACKGROUND

The following material facts are undisputed.

On June 2, 2020, the Defendant purchased a tax sale certificate (the "Tax Sale Certificate") relating to the Property. Motion at ¶ 5; Cross-Motion at ¶ 2. The Tax Sale Certificate states in pertinent part:

> The Office of Finance of Prince George's County, Maryland … does hereby certify that on June 22, 2020, there was sold to Christopher Brusznicki at public auction for the sum of $16,283.10, of which $784.65 has been paid, as well as a high-bid premium in the amount of $163.26, of which $163.26 has been paid, [the Property] and assessed to Tucker Mical.
>
> The property described herein is subject to redemption. Upon redemption, the holder of the certificate will be refunded the sums paid on account of the purchase price together with interest … thereon …. The balance due on account of the purchase price and all taxes, together with interest and penalties thereon, accruing subsequent to the date of sale, must be paid to the Collector before a deed can be delivered to the purchaser. After November 22, 2020, a proceeding can be brought to foreclose all rights of redemption in the property. This certificate will be void unless such a proceeding is brought within two years from the date of this certificate.

Cross-Motion, Ex. 1; Defendant's proof of claim [Claim No. 2-1, Case No. 21-16213-MCR], Ex. 1. Although the Tax Sale Certificate states the purchase price for the Property was $16,283.10,

the Defendant paid only $947.91 ($784.65 plus the high-bid premium of $163.26) at the time of the sale.  Cross-Motion at ¶ 2.

On December 24, 2020, the Defendant filed a Complaint to Foreclose the Right of Redemption in the State Court (Case No. CAE21-00210).  Motion at ¶ 7.  On August 3, 2021, the State Court issued the Redemption Order.  Motion at ¶ 8; Cross-Motion, Ex. 2.  The Redemption Order states in pertinent part:

> ADJUDGED, ORDERED, AND DECREED that the rights of redemption of ALL of the Defendants herein and unto [the Property] be and the same hereby are forever barred and foreclosed.
>
> *     *     *
>
> ADJUDGED, ORDERED, AND DECREED that an absolute and indefeasible estate in fee simple … in and to said property to be and it hereby is vested in Plaintiff, Christopher Brusznicki or their assigns, upon issuance of tax deed, free and clear of all encumbrances except taxes assessed and levied subsequent to the date of the Tax Sale referenced in these proceedings; and it is further
>
> ADJUDGED, ORDERED, AND DECREED that the Treasurer for Prince George's County, Maryland the Collector of Taxes for the State of Maryland be and are hereby directed to execute and deliver over to Christopher Brusznicki, a good and sufficient Deed conveying said property to it free and clear of all encumbrances except those above set forth.
>
> *     *     *
>
> Said Deed shall be issued IMMEDIATELY and WITH ALL DUE SPEED and said County shall not fail to process said Deed.

Cross-Motion, Ex. 2.

On October 1, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.[1]

---

[1] All references to the "Bankruptcy Code" are to Title 11 of the United States Code, and all references to a "Section" are to a section of the Bankruptcy Code unless otherwise stated.

On October 6, 2021, Prince George's County, Maryland ("Prince George's County") filed a proof of claim in the Debtor's bankruptcy case, asserting a secured claim for unpaid property taxes in the amount of $1,650.03 with respect to the Property.  *See* Claim No. 1-1, Case No. 21-16213-MCR.[2]

On October 15, 2021, the Debtor filed his bankruptcy schedules [Dkt. No. 9, Case No. 21-16213-MCR].  The Debtor's bankruptcy schedules, of which this Court may take judicial notice, affirm under oath that, as of the Petition Date, the Debtor's assets and liabilities consisted of the following:

|                                                    |            |
| -------------------------------------------------- | ---------- |
| Assets including the Property:                     | $90,816.40 |
| Value of the Property:                             | $85,300.00 |
| Assets not including the Property:                 | $ 5,516.40 |
|                                                    |            |
| Liabilities including the debt to Defendant:       | $10,256.95 |
| Liabilities not including the debt to Defendant:   | $ 7,500.03 |

Schedules at pp. 1 and 11 [Dkt. No. 9, Case No. 21-16213-MCR].  The Debtor's Schedule C, which lists the property a debtor claims as exempt, asserts an exemption in the Property in the amount of $25,150 under state law.  *Id*.

On December 1, 2021, the Debtor filed the Complaint.[3]

---

[2] A review of the docket in the main bankruptcy case (Case No. 21-16213-MCR) confirms that no one has objected to the claim filed by Prince George's County.  Therefore, the claim is deemed allowed.  *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects.").

[3] "In order to have standing to avoid a transfer, the debtor must establish the following five elements under § 522(h): (1) the debtor could have exempted the property that is the subject of the alleged preference; (2) the transfer would have been avoidable by the trustee; (3) the trustee has not attempted to avoid the transfer; (4) the transfer was not a voluntary transfer of property by the debtor; and (5) and the property was not concealed by the debtor."  *Smoot v. Swann Hill Condominium Unit Owners Ass'n, Inc. (In re Smoot)*, 237 B.R. 875, 880 (Bankr. D. Md. 1999) (citing *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (C.A.9 1995) and 11 U.S.C. §§ 522(g), (h)).  The Defendant did not challenge the Debtor's standing to bring this action nor did the Chapter 13 trustee seek to intervene in this proceeding.

On January 25, 2022, the Defendant filed a proof of claim in the Debtor's main bankruptcy case, asserting a secured claim in the amount of $5,332.04 based on a "tax lien." *See* Claim No. 2-1, Case No. 21-16213-MCR.  The Defendant itemized the claim as follows:

| | |
|---|---|
| Face Value of Tax Sale Certificate | $  784.65 |
| Statutory Fees | $2,897.36 |
| Taxes & Interest | $1,650.03 |
| Total | $5,332.04 |

*Id.*  The itemization explains that the "[p]ayment for Taxes and Interest is subject to confirmation by Prince George's County.  Payment for Taxes and Interest is to be made directly to Prince George's County.  Payment for Statutory Fees is to be made directly to [the Defendant]." *Id.*

At the hearing on the Motion and Cross-Motion, the parties stipulated and agreed that Prince George's County did not deliver a deed transferring fee simple title to the Property to the Defendant pursuant to the Redemption Order and that the Debtor was insolvent during the 90-day period immediately preceding his bankruptcy filing.

The only potentially material fact in dispute is whether the Debtor was insolvent on June 2, 2020, the date the Defendant purchased the Tax Sale Certificate.  The Defendant was unwilling to concede this point.[4]

III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).

---

[4] This disputed fact is not a material fact and is not relevant to the Court's analysis because, as discussed below, there was not a transfer of the Debtor's interest in the Property to the Defendant on that date.

The standard for summary judgment is well-settled. The Court must consider all evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The movant must establish that there are no material facts at issue and that he is entitled to judgment as a matter of law. *McLean, Koehler, Sparks & Hammond v. Hildebrand (In re Hildebrand)*, 230 B.R. 72, 74 (Bankr. D. Md. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A material fact is one that might affect the outcome of the suit under the governing law. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A disputed fact presents a genuine issue if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Spriggs*, 242 F.3d at 183 (quoting *Anderson,* 477 U.S. at 248). The party seeking summary judgment has the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. Once the moving party has met its burden, the nonmoving party must produce sufficient evidence to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. 574, 587 (1986).

IV.    <u>ANALYSIS</u>

A.    <u>Overview of Maryland Tax Sale Procedure</u>

The threshold issue in this proceeding is when a "transfer" of the Debtor's interest in the Property occurred. This necessarily requires the Court to begin its analysis with an overview of Maryland's tax sale procedure. The Maryland tax sale process is codified in Sections 14-808 through 14-854 of the Tax-Property Article, and the provisions relevant to the dispute before the Court are summarized here.[5]

---

[5] For discussions on the tax sale process by this Court and the Maryland courts, *see In re Ford*, 623 B.R. 381, 385 (Bankr. D. Md. 2020); *Fish Mkt. Nominee Corp. v. G.A.A., Inc.*, 650 A.2d 705, 706 (Md. 1994); *Scheve v. Shudder, Inc.*, 614 A.2d 582 (Md. 1992); *Kona Properties, LLC v. W.D.B. Corp., Inc.*, 121 A.3d 191 (Md. Ct. Spec. App. 2015);

In Maryland, when a real property owner fails to pay taxes owed on his property, the unpaid taxes constitute a lien on the property. Md. Code. Ann., Tax-Prop. § 14-804. Within two years from the date the taxes become in arrears, the tax collector for the county in which the real property is located must sell the property at a public auction. Md. Code. Ann., Tax-Prop. § 14-808. Notice of the proposed sale must be given to the property owner at least 30 days before the property is advertised for sale, and the notice must state that the property will be sold if the owner does not pay the taxes within 30 days of the notice. Md. Code. Ann., Tax-Prop. § 14-812. Notice of the proposed sale must also be given to the general public. Md. Code. Ann., Tax-Prop. § 14-813(a)(1). The notice must be published for a specified time and must include: (1) a description of the property; (2) the property owner's name; (3) the amount of taxes due and unpaid; (4) if unimproved or if the property has no street number, a description of the property as it appears on the tax collector's tax roll; and (5) the assessment of the property as determined by the last assessment. Md. Code. Ann., Tax-Prop. § 14-813(d)(1). After the sale is properly advertised, the property is sold at public auction. Md. Code. Ann., Tax-Prop. § 14-817.

The property may not be sold for a value less than the total amount of taxes on the property, accrued interest, penalties on the taxes, expenses incurred in making the sale, and any high bid premium established by the tax collector. Md. Code. Ann., Tax-Prop. § 14-817.[6] The purchaser does not pay the entire bid price at the time of sale. Instead, the purchaser pays the back taxes, and the rest of the bid remains on credit to be paid after the tax sale certificate holder forecloses the title owner's right of redemption. Md. Code. Ann., Tax-Prop. § 14-817. After the sale, the

---

*PNC Bank, Nat'l. Ass'n. v. Braddock Properties*, 81 A.3d 501 (Md. Ct. Spec. App. 2013); and *Heartwood 88, Inc. v. Montgomery Cty.*, 846 A.2d 1096, 1103-04 (Md. Ct. Spec. App. 2004).

[6] In Prince George's County, the high bid premium is equal to 20% of the amount by which the highest bid exceeds the greater of (i) the lien amount or (ii) 40% of the property's full cash value. Md. Code Ann., Tax-Prop. § 14-817.

purchaser receives a certificate of sale which, among other things, describes the property, identifies the sale date, identifies the sale price, and sets a deadline for an action to foreclose the property owner's right of redemption.  Md. Code. Ann., Tax-Prop. § 14-820.

The property owner can redeem the property any time before the tax sale certificate holder obtains an order foreclosing the owner's right of redemption.  Md. Code. Ann., Tax-Prop. § 14-827.  To redeem, the owner must pay (i) the total lien amount paid at the tax sale with interest; (ii) any taxes, interest, and penalties paid by the certificate holder; and (iii) any taxes, interest, and penalties accruing from the date of the tax sale through the date of redemption.  Md. Code. Ann., Tax-Prop. § 14-828(a)(1).  Upon redemption, the tax collector pays these amounts, excluding taxes, to the certificate holder and, in return, the certificate holder surrenders the tax sale certificate. Md. Code. Ann., Tax-Prop. § 14-828(c).

The earliest a tax sale certificate holder can bring an action to foreclose on the owner's right of redemption is six months from the date of the tax sale certificate.  Md. Code. Ann., Tax-Prop. § 14-833(a)(1).  The certificate is void unless a proceeding to foreclose the right of redemption is commenced within two years of the date of the certificate.  Md. Code. Ann., Tax-Prop. § 14-833(c)(1).

Before a complaint foreclosing the right of redemption can be filed, two notices must be provided to the property owner and any lienholders.  Md. Code. Ann., Tax-Prop. § 14-833(a-1)(1). The first notice must be sent at least two months prior to filing the complaint, and the second notice must be sent at least thirty days prior to filing the complaint.  *Id.*  Both notices must contain the same information, specifically: (1) a statement that the tax sale certificate was issued, accompanied by a copy of the certificate; (2) a statement that the owner or any person with an interest in the property may redeem the property at any time until the right of redemption is foreclosed; (3) a

statement that the tax sale certificate holder may commence an action to foreclose the right of redemption two months after the date of the first notice; (4) the amount required to redeem the property; and (5) contact information for the tax sale certificate holder.  Md. Code. Ann., Tax-Prop. § 14-833(a-1)(3).

After the requisite notices are provided, the certificate holder may file its complaint to foreclose the right of redemption.  Md. Code. Ann., Tax-Prop. § 14-835.  The circuit court issues summonses to all defendants and an order of publication directed to all defendants named in the complaint.  Md. Code. Ann., Tax-Prop. §§ 14-839 and 14-840.  The summonses and public notice provide a date, no sooner than 60 days from the date of the publication order, by which anyone with an interest in the property may redeem the property.  Md. Code. Ann., Tax-Prop. §§ 14-839 and 14-840.

After the time for redemptions expires, the circuit court enters a judgment foreclosing the right of redemption, which is final and conclusive on the defendants.  Md. Code. Ann., Tax-Prop. § 14-844(a).  The judgment vests in the certificate holder:

> an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property, except taxes that accrue after the date of sale and easements of record and any other easement that may be observed by an inspection of the property to which the property is subject.

Md. Code. Ann., Tax-Prop. § 14-844(b).  On entry of the judgment, the certificate holder must pay the tax collector any surplus bid and all taxes together with interest and penalties on the taxes due on the property.  Md. Code. Ann., Tax-Prop. § 14-844(d).  The tax collector then delivers a deed conveying fee simple title to the certificate holder, and the property is transferred on the assessment books to the holder of the tax sale certificate for property tax purposes.  Md. Code Ann., Tax-Prop. § 14-831.

B.    <u>Application of Section 547</u>

In Count I of the Complaint, the Debtor seeks to avoid the transfer of his interest in the Property to the Defendant, the tax sale certificate holder, pursuant to the Redemption Order under Section 547(b), which provides in relevant part:

> [T]he trustee may … avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; … and
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

1.    <u>Transfer of an interest of the debtor in property</u>

The first element of a cause of action under Section 547(b) is that there has been a "transfer of an interest of the debtor in property."  11 U.S.C. § 547(b).  Although the Bankruptcy Code defines the term "transfer," it does not define the phrase "interest of the debtor in property." Rather, "[s]tate law determines whether an interest in property exists which can be transferred." *Matson v. Grease Monkey Int'l, Inc. (In re BEV of Virginia, Inc.)*, 237 B.R. 311, 314 (Bankr. E.D. Va. 1998) (citing *American Bankers Ins. Co. of Florida v. Maness,* 101 F.3d 358, 363 (4th Cir.1996) and *Butner v. United States*, 440 U.S. 48, 55 (1979)).

There is no dispute that a transfer of the Debtor's interest in the Property occurred in this case.  However, the parties disagree on whether the transfer occurred when the Defendant

purchased the Tax Sale Certificate on June 2, 2020 (as asserted by the Defendant) or when the State Court entered the Redemption Order on August 3, 2021 (as asserted by the Debtor). If the former, the transfer would be outside the 90-day statutory look-back period of Section 547(b) and not avoidable as a preferential transfer.

The Bankruptcy Code defines "transfer" as:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) *the foreclosure of a debtor's equity of redemption*; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
>     (i)  property; or
>     (ii) an interest in property.

11 U.S.C. § 101(54) (emphasis added). The definition determines the threshold issue of when the transfer of the Debtor's interest in the Property occurred because it defines "transfer" as "the foreclosure of a debtor's equity of redemption." *Id.* The Redemption Order foreclosed the Debtor's redemption rights. Therefore, the Court concludes that the transfer of the Debtor's interest in the Property occurred when the State Court entered the Redemption Order. However, the Defendant contends that all of the Debtor's rights in the Property were transferred or terminated when he purchased the tax sale certificate. Although the Court disagrees based on the express language of the Bankruptcy Code's definition of "transfer," the Court examines the issue further and addresses the Defendant's argument in more detail.

The Defendant argues that the "transfer" occurred on the date of the tax sale auction on June 2, 2020 — well outside of the preference look-back period — because that is when the Tax Sale Certificate evidencing the Defendant's interest in the Property was issued. The Defendant relies on provisions of Title 14 of the Maryland Tax-Property Article, including § 14-823, which provides:

> The certificate of sale or assignment of the certificate of sale is presumptive evidence in all courts in all proceedings by and against the purchaser, and the purchaser's representatives, heirs and assigns, of the truth of the statements in the certificate of sale or assignment of the certificate of sale, of the title of the purchaser to the property described in the certificate of sale or assignment of the certificate of sale, and of the regularity and validity of all proceedings had in reference to the taxes for the nonpayment of which the property was sold and the sale of the property.

Md. Code. Ann., Tax-Prop. § 14-823.  The Defendant also relies on *Hull v. Klamath County (In re Hull)*, 591 B.R. 25 (Bankr. D. Ore. 2018) to argue "that under state law, the property was conveyed for § 547 purposes *on the date of the tax sale itself*, not the date that the redemption rights expired and the deed was issued."  Counter-Motion at ¶¶ 11-12 (emphasis in original).  The Defendant cites additional cases comparing the expiration of a redemption right to the expiration of an option to purchase real property.  Counter-Motion at ¶¶ 11-12 (citing *Edgewater Med. Ctr. v. Edgewater Prop. Co. (In re Edgewater Med. Ctr.)*, 373 B.R. 845, 853 (Bankr. N.D. Ill. 2007) and *Creditors' Comm. for Jermoo's, Inc. v. Jermoo's, Inc. (Matter of Jermoo's, Inc.)*, 38 B.R. 197 (Bankr. W.D. Wisc. 1984)).  As explained below, however, the cases relied on by the Defendant are not applicable to a tax sale conducted under Maryland law.

The Tax Sale Certificate does not contain an absolute transfer of the Property to the Defendant.  Instead, it provides that the Property "is subject to the Debtor's right of redemption."  As explained above, the Debtor could have redeemed the Property any time before the Defendant obtained the Redemption Order by paying the tax collector the amount the Defendant paid at the tax sale with interest, plus taxes, interest, and penalties paid by the Defendant, and taxes, interest, and penalties that have accrued from the date of the tax sale through the date of redemption.  If the Debtor redeemed the Property, the Defendant would have been required to surrender the Tax Sale Certificate.  Md. Code. Ann., Tax-Prop. § 14-828(c).

The Tax Sale Certificate also requires the purchaser to bring a proceeding to foreclose all rights of redemption in the Property within two years from the date of issuance (provided that the proceeding is brought after November 22, 2020); otherwise, the certificate becomes void. Md. Code. Ann., Tax-Prop. § 14-828(c). This is different from Oregon's tax sale procedure as discussed in *Hull*, 591 B.R. at 28-30. Under Oregon tax foreclosure law, there is a "consistent intent on the part of the Oregon Legislature to divest property owners of their ownership rights upon the entry of a judgment of foreclosure of tax liens." *Id.* at 28. The *Hull* court distinguished two types of redemption – equitable redemption, which exists until the interest is foreclosed, and statutory redemption, which only begins after the interest is foreclosed. *Id.* at 29. The court explained that, under Oregon tax foreclosure law, a homeowner never has the equitable right of redemption. *Id.* Rather, the right to redeem is a statutory right provided by Or. Rev. Stat. Ann. § 312.120(2) and is triggered upon entry of the judgment foreclosing the tax lien. *Id.* at 30. Under Oregon law, the right to redeem terminates due to the passage of time and, unlike in Maryland, does not require any affirmative act on the tax sale purchaser's part. *Id.* "Indeed, the foreclosure had already occurred two years prior. As such, neither the lapse of the statutory redemption period nor the subsequent deed to the county constitute a foreclosure of an equity of redemption under § 101(54)(C)." *Id.* This differs from Maryland's tax foreclosure procedure, which does not divest property owners of their ownership rights upon the issuance of a tax sale certificate at a public auction and requires the purchaser of the tax sale certificate to affirmatively bring an action to foreclose the homeowner's right of redemption or the certificate becomes void. *Hull* is therefore inapposite.

Lastly, the Tax Sale Certificate requires the purchaser (the Defendant) to pay the balance due on the "purchase price and all taxes, together with interest and penalties thereon, accruing

subsequent to the date of sale" to Prince George's County "before a deed can be delivered to the purchaser." Cross-Motion, Ex. 1. Thus, even if a tax sale purchaser obtains an order foreclosing the homeowner's right of redemption, the purchaser does not obtain a deed to the subject property until all required amounts are paid. Maryland real property law provides that "a transfer of real estate 'is so perfected that a bona fide purchaser from the debtor ... cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee ...' at the time the transferee's deed is recorded." *Whitney v. Newman (In re Whitney)*, 06-14435-TJC, 2007 WL 2230063, at *4 (Bankr. D. Md. Jul. 30, 2007), *aff'd,* CV DKC 2007-2279, 2008 WL 11518454 (D. Md. Feb. 4, 2008) (citing Md. Code Ann., Real Prop. § 3–203).[7]

In the instant case, the Redemption Order vested in the Defendant "an absolute and indefeasible estate in fee simple" in and to the Property "upon issuance of tax deed, free and clear of all encumbrances except taxes assessed and levied subsequent to the date of the Tax Sale [.]" The Redemption Order further directs the Treasurer for Prince George's County to "IMMEDIATELY and WITH ALL DUE SPEED" execute and deliver to the Defendant a deed conveying the Property free and clear of all encumbrances except taxes assessed and levied subsequent to the date of the tax sale. Cross-Motion, Ex. 1. Although the parties agree that Prince George's County did not issue a deed to the Defendant, the language of the Redemption Order

---

[7] Md. Code Ann., Real Prop. § 3–203 provides:

> Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:
>
> (1) Accepted delivery of the deed or other instrument:
>     (i) In good faith;
>     (ii) Without constructive notice under § 3–202; and
>     (iii) For a good and valuable consideration; and
> (2) Recorded the deed first.

Md. Code Ann., Real Prop. § 3–203.

vested fee simple title to the Property in the Defendant.  Accordingly, the Court finds that the issuance of the deed under these facts would have been a ministerial act and not the point in time at which the "transfer" occurred for purposes of Section 547(b).

At the summary judgment hearing, the Defendant compared the tax foreclosure process to the mortgage foreclosure process under Maryland law.  The Defendant argued that the auction at which the Tax Sale Certificate was purchased is akin to a mortgage foreclosure auction at which a homeowner's right to cure a default terminates and that entry of the Redemption Order is akin to an order ratifying a mortgage foreclosure because the ratification directs the unification of the equitable and legal titles to the Property.  Although this Court agrees that a comparison of the two types of sale procedures is useful here, the Court finds the Defendant's comparison notably askew.  The better comparison is that the Redemption Order, which terminated the Debtor's right to redeem the Property, is akin to a mortgage foreclosure auction, which terminates a homeowner's right to cure any default.  *See Homeside Lending, Inc. v. Denny (In re Denny)*, 242 B.R. 593, 597 (Bankr. D. Md. 1999) (concluding a foreclosure sale in Maryland is complete "when the gavel falls" on the actual date of sale and a debtor has no right thereafter to cure a default pursuant to the Bankruptcy Code).  That is when the homeowner's interest is transferred to the purchaser.  The purchaser of a tax sale certificate may acquire lien rights to the subject property upon purchase of the certificate, but the homeowner does not lose his/her rights to the property until the right of redemption is foreclosed.

Moreover, as stated in *Denny*, "[u]pon the successful bid by [the purchaser] at foreclosure, equitable title vested in him, and he, therefore, possessed the equitable right to legal title upon ratification and payment of the amount bid at auction."  *Id.*  This correlates with the tax sale process, which vests ownership to the subject property in the tax certificate purchaser upon entry

of the order foreclosing the homeowner's right of redemption with the deed to transfer upon payment of the balance of the sale price and any taxes due.

For these reasons, the Court finds that the transfer occurred upon entry of the Redemption Order on August 3, 2021.

2.    Section 547(b)(1)

The second required element of an action under Section 547(b) is that the transfer was made "to or for the benefit of a creditor[.]"  11 U.S.C. § 547(b).  The Debtor alleges, and the Defendant does not dispute, that the transfer of the Property was to or for the Defendant's benefit. However, the parties disagree on whether the Defendant was a "creditor" at the time of the transfer. The Defendant argues that he was a purchaser of the Property as of June 2, 2020, not a creditor, akin to when a lender credit bids during a mortgage foreclosure.  Despite this argument, the Defendant (rightfully) conceded at the summary judgment hearing that, if the Court concludes that the transfer took place upon entry of the Redemption Order, then the Defendant became a creditor of the Debtor upon his purchase of the Tax Sale Certificate in June 2020.

As set forth above, the Court finds that the transfer took place upon entry of the Redemption Order.  Therefore, there is no dispute that the Defendant was a "creditor" at the time the Redemption Order was entered.  This is bolstered by the Bankruptcy Code's broad definitions of "creditor" and "claim."[8]  The Defendant acquired Prince George's County's tax lien against the Property when he purchased the Tax Sale Certificate and acquired all of the rights of a lien holder. This created a "right to payment" by the Debtor, and the right to payment was satisfied when the

---

[8] Section 101(10)(A) defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).  Section 101(5)(A) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

State Court entered the Redemption Order which transferred the Debtor's interest in the Property to the Defendant.  Contrary to a credit bid situation, the Defendant did not purchase the Property itself at the tax sale auction; he purchased Prince George's County's lien and succeeded to Prince George's County's position as a creditor.  Until the right of redemption was foreclosed, the Debtor could have paid the balance due on account of the tax lien and any other amounts allowable under Maryland law, at which point the Debtor's debt to the Defendant would have been satisfied and the Tax Sale Certificate would have been surrendered under Maryland law.  *See* Md. Code. Ann., Tax-Prop. § 14-828(c) ("On receipt of the proper amount, the collector shall notify the holder of the certificate of sale that the property has been redeemed and that on surrender of the certificate of sale all redemption money excluding taxes received by the collector will be paid to the holder.")

For these reasons, the Court concludes that the transfer was "to or for the benefit of" the Defendant and that the Defendant was a "creditor" of the Debtor at the time the State Court entered the Redemption Order.

### 3.    Section 547(b)(2)

The third element the Debtor must establish is that the transfer was "for or on account of an antecedent debt owed by the debtor before the transfer was made."  11 U.S.C. § 547(b)(2).  For the reasons previously stated, the transfer under the Redemption Order was on account of the tax lien arising from the Debtor's failure to pay real property taxes and the statutory fees and costs arising from the Defendant's purchase of the Tax Sale Certificate.  These obligations preceded entry of the Redemption Order and are, therefore, antecedent debts.

4.    11 U.S.C § 547(b)(3)

The fourth element required for an action under Section 547(b) is that the transfer was "made while the debtor was insolvent."  11 U.S.C. § 547(b).  Section 101(32)(A) defines "insolvent" as follows:

> with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of … property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A). Section 547(f) provides that a debtor is presumed to be insolvent "on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). "The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." *Kopec v. Tower DBW REO VI, LLC (In re Kopec)*, 621 B.R. 621, 624 (Bankr. D.N.J. 2020) (citing House Report No. 95-595, 95th Cong., 1st Sess. 375 (1977); Senate Report No. 95-989, 95th Cong. 2d. Sess. 89 (1978)).

The parties stipulate that the Debtor was insolvent during the 90-day period immediately preceding his bankruptcy filing on October 1, 2021.  Accordingly, in light of the Court's finding that the transfer occurred upon entry of the Redemption Order on August 3, 2021, this element is satisfied.

5.    11 U.S.C § 547(b)(4)

The fifth element the Debtor must establish is that the transfer was made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b).  Again, the Court concludes that the transfer took place on August 3, 2021, less than 90 days prior to the Petition Date.  The transfer therefore falls within the preference look-back period.

6.      11 U.S.C § 547(b)(5)

The sixth and final element of a cause of action under Section 547(b) is that the transfer must have enabled the creditor "to receive more than such creditor would receive if the case were a case under chapter 7 of this title, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of this title."  11 U.S.C. § 547(b).

The Debtor argues that this element is satisfied because the amount the Defendant paid to purchase the Tax Sale Certificate and any amounts paid after entry of the Redemption Order are significantly less than the Property's fair market value.  Motion at¶ 29.

The Defendant argues that payments to a fully-secured creditor are not preferential because the creditor would receive payment up to the full value of its collateral in a Chapter 7 liquidation.  Counter-Motion at ¶ 17 (citing *Ray v. City Bank and Trust Co. (In re C-L Cartage Co., Inc.),* 899 F.2d 1490, 1493 (6th Cir. 1990)).  The Defendant relies on *Wilson v. U.S. Bank, N.A. (In re Wilson)*, No. 19-00504, 2020 WL 5542444 (Bankr. D.D.C. Sept. 14, 2020).  Counter-Motion at ¶ 18.  *Wilson* involved an alleged preferential transfer by a debtor to U.S. Bank, which was the holder of the deed of trust against the subject property and the purchaser of the subject property by virtue of being the highest bidder at the foreclosure auction.  *Id.* at *3.  Although the *Wilson* court determined that both the transfer of the net proceeds from the foreclosure sale and the transfer of the subject property to U.S. Bank as the purchaser at the auction were outside of the 90-day preference look-back period, the court still addressed whether the payment to U.S. Bank from the foreclosure sale enabled it to receive more than it would in a Chapter 7 case had the sale not occurred.  The court stated:

> [a]s required by 11 U.S.C. § 547(b)(5), a payment to a creditor from a foreclosure sale is a preference only if it enables the creditor to receive more than it would in a Chapter 7 case had the sale not occurred.  "Payments to a creditor who is fully secured are not

preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation." *In re C–L Cartage Co., Inc.*, 899 F.2d 1490, 1493 (6th Cir. 1990). The record is unclear whether the foreclosure sale was for the full amount owed to U.S. Bank, but the reasoning of *C-L Cartage* still applies even if the sale was for less than the amount of U.S. Bank's claim. If the foreclosure sale had not occurred, then in a Chapter 7 bankruptcy case, U.S. Bank would have been entitled to receive the same amount if the Property were sold by the Chapter 7 trustee. Accordingly, U.S. Bank was not enabled by its foreclosure sale to obtain a greater payment than it would in a Chapter 7 case had the foreclosure sale not occurred. A payment to a lien creditor out of its collateral cannot be preferential: if the sale had not occurred, the creditor would be entitled in a Chapter 7 case to enforce the lien against the collateral for the same amount. The claim for that amount was fully secured even if the balance of its claim was unsecured, and the holding of *C-L Cartage* applies to the receipt of that amount from the creditor's collateral.

*Id.*

In this case, had the Redemption Order not been entered prior to the Debtor's bankruptcy filing, then the Defendant would have had a claim against the Debtor in the amount of $5,332.04 (*i.e.*, the amount paid at the tax sale, statutory fees, and taxes and interest) as asserted in his proof of claim. This is the amount for which any distributions made by a Chapter 7 trustee would be based. Once the Redemption Order was entered, however, the Defendant effectively became the owner of the Property, which the Debtor valued at $85,300. Until that point, the Defendant's claim was secured to the full value of the tax lien and any allowed statutory fees and costs, *i.e.*, the rights it acquired when it purchased the Tax Sale Certificate. It is clear from comparing the value of the Property ($85,300) and the value of the Defendant's tax lien ($5,332.04) that entry of the Redemption Order enabled the Defendant to receive far more than it would have received in a Chapter 7 liquidation. This is an entirely different scenario than the circumstances in *Wilson* where the lender's claim was the same regardless of whether the subject property was sold at a prepetition foreclosure or a postpetition sale by a Chapter 7 trustee.

The *Wilson* court also addressed whether a transfer of property of a debtor to a foreclosure sale purchaser may be subject to avoidance under Section 548 as a fraudulent conveyance. *Id.* Although the Court will address this standard in more detail as part of its analysis of Count II (brought under Section 548), it is relevant to Count I because the Defendant argues that the United States Supreme Court's holding in *BFP v. Resolution Tr. Corp.*, 511 U.S. 531 (1994), should be extended to preference actions under Section 547(b). *See* Counter-Motion at ¶¶ 21-23 (arguing *BFP*'s application to the instant case).

In *BFP*, the Supreme Court determined that the price received at a mortgage foreclosure sale conducted in conformance with applicable state law "conclusively satisfies the Bankruptcy Code's requirement that transfers of property by insolvent debtors within one year prior to the filing of a bankruptcy petition be in exchange for 'a reasonably equivalent value,'" as required by Section 548(a)(2). *BFP* 511 U.S. at 545.

The *Wilson* court discusses *BFP* in the following context:

> [A]s held in *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 545 (1994), "'reasonably equivalent value,' for foreclosed property, is the price in fact received at a non-collusive foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." The foreclosure sale here was ratified by the Superior Court as having been conducted in accordance with District of Columbia law. It is thus not avoidable as a fraudulent conveyance.

*Wilson*, 2020 WL 5542444, at *3. The court continued:

> The courts are split on whether such a transfer of a property, when treated as being on account of an antecedent debt, can be set aside as a preference. I agree with those courts that hold that the policies underlying the reasoning in *BFP v. Resolution Trust Corp.* (which dealt with a fraudulent conveyance claim, not a preference claim) warrant treating the lienor as not having received a preference if the foreclosure sale was for reasonably equivalent value (and is thus not avoidable as a fraudulent conveyance under 11 U.S.C. § 548).

*Id.* at *4.  Footnote 6 then states:  "I note that there may be reason to question whether a tax foreclosure sale deserves the same protection accorded *BFP v. Resolution Tr. Corp.* to a real estate mortgage foreclosure sale.  This case involves a foreclosure sale incident to a real estate mortgage (in the form of a deed of trust)."  *Id.* at *4, n.6.

Despite the *Wilson* court's hesitation to apply *BFP* to a tax foreclosure, the Defendant points out that *Wilson* and other courts have extended *BFP's* holding to other types of foreclosures and have determined that amounts paid through a regularly-conducted foreclosure sale defeat Section 547(b)(5), which requires that the transfer enabled the creditor to receive more than it would if the case was a Chapter 7 case and the transfer had not occurred.  The Defendant argues: "[t]he majority of courts have held that a secured Creditor that acquires real estate by virtue of being the high bidder at a regularly conducted, non-collusive foreclosure sale has not received an avoidable preference under § 547, even in cases where the property was worth more than the debt." Counter-Motion at ¶ 21 (citing *Newman v. FIBSA Forwarding, Inc. (In re FIBSA Forwarding, Inc.)*, 230 B.R. 334 (Bankr. S.D. Tex. 1999) (applying *BFP* to a mortgage foreclosure sale to defeat a Section 547 action) and *Chase Manhattan Bank v. Pulcini (In re Pulcini)*, 261 B.R. 836, 844 (Bankr. W.D. Pa. 2001) (holding that a prepetition transfer of a debtor's interest in real property to a lien creditor who purchased the property at a regularly-conducted sheriff's sale and who then sells the property to a third party for a greater amount did not "receive more" for purposes of Section 547(b)(5)).

This is a matter of first impression for this Court and after analyzing Maryland's tax foreclosure law and the relevant case law, the Court is unwilling to extend the holding in *BFP* to preference actions under Section 547(b).

First, the holding in *BFP* is explicitly restricted to mortgage foreclosure sales.  *See BFP*, 511 U.S. at 537 n.3 ("We emphasize that our opinion today covers only mortgage foreclosures of real estate.  The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.").  Second, the term "reasonably equivalent value" – the focus of the Supreme Court's analysis in *BFP* – is not used in Section 547(b).  The phrase is exclusive to Section 548.  *BFP* therefore has no relevance to Section 547.  In addressing the application of *BFP* to an action to avoid a tax sale as a preferential transfer, the United States Court of Appeals for the Third Circuit reached the same conclusion, stating:

> *BFP* differs from the case before us in two crucial ways.  First, the Court was interpreting the fraudulent transfer provision, § 548, not the preferential transfer provision.  Second, the decision involved a mortgage foreclosure, not a tax foreclosure. These are not trivial distinctions.  The *BFP* opinion is grounded in the text of § 548, in particular the term "reasonably equivalent value," which is not defined in the Code and appears nowhere else.

*Hackler v. Arianna Holdings Co., LLC (In re Hackler and Stelzle-Hackler)*, 938 F.3d 473, 478 (3d Cir. 2019).[9]

The Court found very few cases analyzing *BFP* in terms of avoiding a tax sale under Section 547.  Most of the cases the Court identified originated from New Jersey, where courts have consistently declined to apply *BFP* to tax sale preference actions.  One such case is *GGI Properties, LLC v. City of Millerville (In re GGI Properties, LLC)*, 568 B.R. 231 (Bankr. D.N.J. 2017), in which the bankruptcy court declined to apply *BFP* to a preference action challenging a tax foreclosure.  In fact, the bankruptcy court declined to apply *BFP* to the debtor's challenge to the

---

[9] Moreover, there are significant differences between mortgage foreclosure proceedings and other type of foreclosure proceedings, such as sheriff's sales and tax sales, and these proceedings vary significantly from state to state.  These differences make it inappropriate to apply holdings from another jurisdiction to a proceeding in this Court unless the Court undertakes a thorough analysis of the other state's foreclosure proceedings and determines those proceedings are similar in all relevant ways to a Maryland tax sale proceeding.

tax sale under both Section 548 and Section 547 because the court did not believe the amount received at the tax sale certificate foreclosure necessarily reflected a reasonably equivalent value for the property. *Id.* at 246. The court's conclusion was based, in part, on the purpose of New Jersey's tax sale law, which "is to simply enhance the tax collecting ability of municipalities and provide marketable titles, not define value." *Id.* at 245.

Another case discussing *BFP* in the context of Section 547 is *Turner v. U.S.A (In re Turner)*, 225 B.R. 595, 599-600 (Bankr. D.S.C. 1997), in which a debtor sought to set aside a tax sale as both a preference and a fraudulent conveyance. The bankruptcy court determined that the tax sale could not be avoided as a fraudulent conveyance and then addressed the preference portion of the debtor's complaint in a few sentences. With respect to Section 547(b), the court stated – without any analysis – that a tax sale conducted by the I.R.S. "was not a preference as the Federal Tax Lien constituted a secured priority lien which was entitled to be paid from the proceeds of sale generated by the tax sale" and that the "prepetition transfers of property to secured creditors are not preferences." *Id.* at 599. Although the court extended *BFP* to the tax sale for purposes of Section 548, it did not discuss *BFP* in its brief discussion of the debtor's preference action under Section 547. The lack of analysis renders the decision unhelpful with respect to Count I.

This Court finds the reasoning of *GGI Properties* and *Hackler* persuasive and, as explained in detail with respect to Count II, determines that the holding in *BFP* is not applicable to the instant transfer under either Section 547(b) or Section 548.

The Defendant's final argument that Section 547(b)(5) has not been met seeks to distinguish purchasers at a foreclosure sale from lenders who purchase their collateral at a foreclosure sale. The Defendant relies on *Ehring v. Western Community Moneycenter (In re Ehring)*, 900 F.2d 184, 188 (9th Cir. 1990), another mortgage foreclosure case in which the secured

lender was the prevailing bidder at a foreclosure sale. The lender/purchaser then sold the subject property to a third-party purchaser for more money than what the debtor had owed to the lender. *Id.* at 186. The debtor filed a preference complaint against the lender for the difference between the amount the debtor owed on the deeds of trust (plus the foreclosure costs) and the sale price to the third-party purchaser. The debtor did not contest the subsequent third-party sale. *Id.* When assessing whether the lender received "more" than it would have in a Chapter 7 liquidation than if the sale had not occurred, the court stated:

> This analysis, however, fails to consider the reality of the transaction. If the creditor received "more" it is only because the creditor elected to purchase the property at the foreclosure sale rather than simply accepting the receipts of a sale to a third party. Had the third party outbid the creditor, there could be no preference because the price paid would not have been transferred for an antecedent debt. Since section 547 does not reach a third-party purchaser, it is difficult to see why the existence of a preference should turn on the status of the purchaser as a creditor.

*Ehring*, 900 F.2d at 188.

Citing this passage, the Defendant argues that "Section 547 should not apply to a transaction where a Creditor purchases a subject property at a foreclosure sale as both the Creditor and a third-party purchaser would have the same right to bid on the property." Counter-Motion at ¶ 25. The Court does not find this argument persuasive. As previously stated, the Defendant (rightfully) conceded at the summary judgment hearing that, if the Court concludes that the transfer took place upon entry of the Redemption Order, then the Defendant became a creditor of the Debtor upon his purchase of the Tax Sale Certificate in June 2020. This is distinguishable from the circumstances in *Ehring*, where the alleged preferential transfer involved a subsequent transaction to a third-party purchaser and the profit made by the foreclosing lender was outside the reach of Section 547.

7.    <u>Conclusion</u>

For these reasons, the Court concludes that the Debtor has established all of the elements for avoidance and recovery of a preferential transfer under Sections 547(b) and 550. Thus, summary judgment must be entered in favor of the Debtor on Count I. Transfer of the Property pursuant to the Redemption Order must be avoided and title must be vested in the Debtor.

C.    <u>Application of Section 548</u>

In Count II of the Complaint, the Debtor seeks to avoid the transfer effectuated by the Redemption Order as a fraudulent conveyance under Section 548 of the Bankruptcy Code, which provides in pertinent part:

> (a) (1) The trustee may avoid any transfer … of an interest of the debtor in property … that was made … on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily …
>> (B) (i)  received less than a reasonably equivalent value in exchange for such transfer …; and
>>> (ii) (I) was insolvent on the date that such transfer was made … or became insolvent as a result of such transfer.

11 U.S.C. § 548.

1.    <u>Transfer of an interest of the debtor in property</u>

The first element for a cause of action under Section 548 is that there must be a "transfer … of an interest of the debtor in property." *Id.* For the reasons discussed in detail above, the Court finds that entry of the Redemption Order was a transfer of an interest of the Debtor in the Property.

2.    <u>Transfer within two years of the bankruptcy filing</u>

The second element is that the transfer was made "on or within 2 years before the date of the filing of the petition." *Id.* As previously stated, the transfer occurred on August 3, 2021, when

the State Court entered the Redemption Order, less than two months before the October 1, 2021

Petition Date and well within the two-year look-back period for a fraudulent transfer.

### 3.    Transfer for less than reasonably equivalent value

Third, the recipient must have "received less than a reasonably equivalent value in

exchange for such transfer." *Id.* This element is the crux of the dispute regarding Count II.

The Bankruptcy Code defines "value" for purposes of Section 548 as "property, or

satisfaction or securing of a present or antecedent debt of the debtor[.]" 11 U.S.C. § 548(d)(2)(A).

Unfortunately, the Bankruptcy Code is silent as to the definition of "reasonably equivalent value."

As explained by this Court in *Friedman v. American Capital, Ltd. (In re Barton-Cotton,*

*Inc.)*, 09-12066-DK, 2012 WL 2803742, at *9 (Bankr. D. Md. Jul. 10, 2012):

> The Bankruptcy Code does not provide a definition for "reasonably
> equivalent value", and courts have developed various tests in order
> to determine if consideration of reasonably equivalent value was
> given in an exchange. *See Mellon Bank, N.A. v. Official Committee*
> *of Unsecured Creditors of R.M.L., Inc. (In re RML, Inc.),* 92 F.3d
> 139, 153 (3d Cir.1996) (In reviewing a bankruptcy court's
> determination that reasonably equivalent value was not exchanged
> between the parties, the Third Circuit noted that "the bankruptcy
> court appropriately relied on the totality of the circumstances test.").
> *But see Durrett v. Washington Nat. Ins. Co.,* 621 F.2d 201, 203
> (1980), overruled on other grounds in *BFP v. Resolution Trust*
> *Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)
> (Where the Fifth Circuit found that a sale that yielded 70% of the
> fair market value was presumptively valid); *In re Madrid,* 725 F.2d
> 1197, 1203 (9th Cir.1980) (A price yielded by a foreclosure sale
> conducted in the ordinary course will constitute reasonably
> equivalent value). The [sic] Fourth Circuit has adopted a test that
> looks at the totality of the circumstances. *See In re Morris*
> *Communications NC, Inc.,* 914 F.2d 458, 466–67 (4th Cir.1990)
> (rejecting a "mathematical formula for determining reasonable
> equivalence and opt[ing] [ ] for the standard that 'reasonable
> equivalence should depend on all the facts of each case.'"); *Brown*
> *v. Goldome Realty Credit Corp. (In re Brown),* 126 B.R. 481, 484
> (Bankr. D. Md.1991) (Recognizing that the Fourth Circuit in *Morris*
> *Communications* had rejected using a "rigid mathematical formula
> ... in favor of a more flexible, case-by-case analysis.").

> In determining whether reasonably equivalent value was given, a court can consider factors such as the fair market value of the benefits received, the existence of an arm's length relationship and the good faith of the parties. *In re Morris Communications,* 914 F.2d at 467.

*Id.* This Court stated in another unreported decision:

> In order to determine whether the debtor received reasonably equivalent value for the transfer, the Court must compare the value of the consideration received by the debtor with the value of the property transferred by the debtor. *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 546 (1994) ("There is no doubt that this provision [11 U.S.C. § 548(a)(1)(B) ] directs an inquiry into the relationship of the value received by the debtor to the worth of the property transferred.") Reasonable equivalence is to be determined as of the date of the transfer. *In re Morris Communications NC, Inc.,* 914 F.2d 458, 466 (4th Cir.1990). "[R]easonable equivalence is not wholly synonymous with market value even though market value is an extremely important factor to be used in the Courts assessment of reasonable equivalence." *Id.* The determination of whether reasonably equivalent value was received requires a case by case analysis taking into account the good faith of the transferee and whether the sale was "an arms length transaction between a willing buyer and a willing seller." *Id.*

*Whitney v. Newman (In re Whitney)*, 06-14435-TJC, 2007 WL 2230063, at *4 (Bankr. D. Md. Jul. 30, 2007), *aff'd,* CV DKC 2007-2279, 2008 WL 11518454 (D. Md. Feb. 4, 2008).

As highlighted in these two decisions and as discussed previously, the Supreme Court has addressed "reasonably equivalent value" in the context of a mortgage foreclosure and determined "that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP*, 511 U.S. at 545. As also noted earlier, the holding in *BFP* was explicitly limited to mortgage foreclosures. *Id.* at 537 n.3 ("We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different."). Yet, as the Defendant points out, courts are split on whether to apply *BFP* to tax foreclosures

sought to be avoided under Section 548 where the tax sale was conducted in conformance with applicable state law.[10]   *See* Counter-Motion at ¶¶ 27-28 (collecting cases).   Pursuant to one such decision, "the decisive factor in determining whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure."   *Hojima v. Grandote Int'l LLC (In re Grandote Country Club Co., Ltd.)*, 252 F.3d 1146, 1152 (10th Cir. 2001).

In the instant case, there is no allegation that the tax sale of the Property was not in compliance with Maryland's state tax law, which provides for notice and competitive bidding at a public auction.   Nevertheless, upon consideration of the totality of the circumstances, the Court agrees with those courts finding that the bidding structure in a tax foreclosure sale does not conclusively satisfy the "reasonably equivalent value" element of Section 548.

The difference between the value of the property and the minimum bids required at a Maryland tax foreclosure auction are too disparate to conclusively be considered "reasonably

---

[10] The United States Court of Appeals for the Second Circuit recently joined the Third, Sixth, and Seventh Circuits in declining to apply the holding in *BFP* to a tax foreclosure sale.  *See Gunsalus v. County of Ontario, NY*, 37 F.4th 859 (2d Cir. 2022) (limiting application of *BFP* to mortgage foreclosure sales); *see also Lowry v. Southfield Neighborhood Revitalization Initiative (In re Lowry)*, 20-1712, 2021 WL 6112972, at *4 (6th Cir. Dec. 27, 2021) ("It is true that the foreclosure sale in *BFP* did not necessarily result in fair market value, but it was at least somewhat correlated to the value of the property in the not-purely-market conditions of a statutory foreclosure sale.  This is simply not the case when a tax foreclosure sale focuses on the value of the taxes owed rather than on the value of the property."); *Hackler v. Arianna Holdings Co., LLC (In re Hackler and Stelzle-Hackler)*, 938 F.3d 473, 478 (3d Cir. 2019) (discussed *supra*); and *Smith v. SIPI, LLC (In re Smith)*, 811 F.3d 228, 234 (7th Cir.), *cert. denied*, —— U.S. ——, 137 S.Ct. 103, 196 L.Ed.2d 40 (2016) (discussed *supra*).  In *Gunsalus*, the Second Circuit recognized that the holding in *BFP* was limited to mortgage foreclosure sales and stated: "[t]hat admonition is dispositive because, as we have seen, the strict foreclosure procedures under the [New York Real Property Tax Law] offer far fewer debtor protections than the mortgage foreclosure procedures at issue in *BFP*."  *Gunsalus*, 37 F.4th at 865.  The Second Circuit further stated that the "County's position would produce results that are fundamentally at odds with the goals of bankruptcy law.  Here, it would give the County a windfall at the expense of the estate, the other creditors, and the debtor—which is precisely what the Code's fraudulent conveyance provisions are intended to prevent."  *Id.* at 866.  The Court notes that the Fifth, Ninth, and Tenth Circuits have extended *BFP*'s holding to tax foreclosure sales conducted in accordance with state law.  *See, e.g., Tracht Gut, LLC v. Los Angeles County Treasurer (In re Tracht Gut, LLC)*, 836 F.3d 1146 (9th Cir. 2016); *Kojima v. Grandote Int'l Ltd. Liab. Co. (In re Grandote Country Club, Ltd.)*, 252 F.3d 1146, 1152 (10th Cir. 2001); and *T.F. Stone Co. v. Harper (In re T.F. Stone Co.)*, 72 F.3d 466, 472 (5th Cir. 1995).  The United States Court of Appeals for the Fourth Circuit has yet to weigh in on this issue.

equivalent." In Maryland, real property taxes are a fraction of the property's assessed value. In Prince George's County, the real property tax rate is $1 per $100 of the property's assessed value, with that rate being reduced for properties located within incorporated areas (municipalities) within the County. *See Property Taxes,* Prince George's County, MD, https://www.princegeorgescountymd.gov/426/Property-Taxes (last visited Jun. 15, 2022). When the Court compares the value of the consideration received by the Debtor, *i.e.*, the satisfaction of tax liens against the Property totaling $784.65, with the value of the property transferred to the Defendant, *i.e.*, the $85,300 value of the Property, the Court reaches the inescapable conclusion that the transfer was not a reasonably equivalent exchange. *See Whitney*, 2007 WL 2230063, at *5 (citing *BFP,* 511 U.S. at 546) ("the Court must compare the value of the consideration received by the debtor with the value of the property transferred by the debtor"). This is nothing short of a windfall for the Defendant regardless of the opportunities to redeem afforded by Maryland's tax sale procedures and the opportunities for competitive bidding.

In declining to extend *BFP* to a prepetition tax foreclosure sale conducted pursuant to New Jersey law, the *GGI Properties* court looked to an opinion rendered by the United States Court of Appeals for the Seventh Circuit, stating:

> While at first blush, the lower courts appear to be divided on whether *BFP*'s reasoning applies equally in tax sale foreclosures, the court in *In re Smith*, 811 F.3d 228 (7th Cir.), *cert. denied sub nom. Smith v. SIPI, LLC*, ⸻ U.S. ⸻, 137 S.Ct. 103, 196 L.Ed.2d 40 (2016), explained why that is not necessarily the case. It described the three methods states generally choose from for collecting delinquent property taxes: the overbid method, the interest rate method, and the percentage ownership method. *Id.* at 237. In the overbid method, "the bidding price begins at the total amount of taxes and interest due, and potential buyers then offer higher bids up to the total price they are willing to pay in return for (eventual) fee simple title. ... The fair market value of the property is at least in theory the ceiling for amounts that might be bid. The winner of this competitive bidding receives rights to the property." *Id.* This

appears to be the system used by our sister-state, Pennsylvania, where *BFP*'s reasoning has been held to also apply to tax sale foreclosures. *In re Lord*, 179 B.R. 429 (Bankr. E.D. Pa. 1995). *See Crespo v. Abijah Tafari Immanuel (In re Crespo)*, 557 B.R. 353 (Bankr. E.D. Pa. 2016), *aff'd*, 2017 WL 1177186 (E.D. Pa. March 30, 2017).

"In the percentage ownership method, the successful purchaser bids to purchase the tax lien for the lowest percentage ownership in the underlying property." *Smith*, at 237, n. 1 (internal quotation omitted). The *Smith* court commented that Iowa uses this method. *Id.*

Finally, *Smith* described the interest rate method as used in Illinois, the state at issue in the *Smith* appeal. There,

> bidders vie to purchase the tax lien, not the property itself. They do so by bidding *down*. See *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 752–53 (7th Cir. 2011). Bids are expressed not as a total price for the property but rather as decreasing interest percentages. *Id.* These percentages are the penalty interest rates that the buyer may demand from the delinquent taxpayer (or mortgage lender) to redeem the property. *Id.* In Illinois, the bids therefore work *down* from a statutory ceiling of eighteen percent. Zero percent is the floor. 35 Ill. Comp. Stat. 200/21–215 (2015).

> Under this system, the *lowest* bidder wins and is granted the lien and a certificate of purchase. ... And if the delinquent taxpayer and any mortgage lenders fail to redeem in the subsequent two years, the buyer takes the property free and clear.

*In re Smith*, 811 F.3d at 237–38 (emphasis in original). Because this system "is not designed to produce bids that could fairly be called 'reasonably equivalent value,' ... there is no correlation between the sale price and the value of the property." *Id.* at 238 (internal quotation omitted). Accordingly, the *Smith* court reversed the decision of the district court that had reversed the bankruptcy court's judgment in favor of the debtors, to hold that *BFP*'s "conclusiveness" rationale could not apply to Illinois's tax sale certificate foreclosure process. *Id.* at 247.

*GGI Properties*, 568 B.R. at 241–42.  This lengthy recitation captures this Court's unwillingness

to extend *BFP* to tax sales.  Simply put, there is no correlation between the price at a tax foreclosure

sale (which is based on the amount of the outstanding taxes) and the value of the property.

Although Maryland's tax sale process is determined by the highest bid and Illinois' is

determined by the lowest-interest bid, the Maryland process seems most analogous to Illinois'

"interest rate method" described above where bidders "vie to purchase the tax lien, not the property

itself."  *GGI Properties*, 568 B.R. at 241–42 (quoting *Smith v. SIPI, LLC (In re Smith)*, 811 F.3d

228, 237 (7th Cir.), *cert. denied*, ⸺ U.S. ⸺, 137 S.Ct. 103, 196 L.Ed.2d 40 (2016)).   In

Maryland, a property being sold at a tax sale auction "may not be sold for a sum less than the total

amount of all taxes on the property that are certified to the collector under § 14-810 of this subtitle,

together with interest and penalties on the taxes and the expenses incurred in making the sale, *and

the lien for the taxes, interest, penalties, and expenses passes to the purchaser*."  Md. Code Ann.,

Tax-Prop. § 14-817 (emphasis added).   Similar to Illinois' tax sale foreclosure process, this

provision makes clear that what the prevailing bidder at a tax sale auction is truly acquiring is the

"lien for the taxes, interest, penalties, and expenses."  *Id.*  Also similar to Illinois, the winning

bidder in a Maryland tax sale receives the potential to obtain legal title to the property, but it does

not acquire the deed at the time of the tax sale.

Maryland's tax sale procedure is also comparable to the tax sale procedure in New Jersey.

In New Jersey, purchasers at a tax sale bid on what interest rate should be charged on the

redemption amount for the property's owner to redeem the property.  New Jersey's highest court

described this process as follows:

> Pursuant to *N.J.S.A.* 54:5–32, an investor includes in its bid the rate
> of interest that it is willing to accept upon redemption of the
> certificate.  *N.J.S.A.* 54:5–32.  The winning bidder is the investor
> who "will purchase the property, subject to redemption at the lowest

rate of interest, but in no case in excess of 18% per annum." *N.J.S.A.* 54:5–32. The statute authorizes bidders who are willing to accept redemption "at a rate of interest less than 1%, or at no interest," to offer to pay "a premium over and above the amount of taxes, assessments or other charges ... due the municipality." *N.J.S.A.* 54:5–32. "[T]he property [is] struck off and sold to the bidder who offers to pay the amount of such taxes, assessments or charges, plus the highest amount of premium." *N.J.S.A.* 54:5–32.

*Princeton Office Park, LP v. Plymouth Park Tax Services, LLC*, 93 A.3d 332, 338 (N.J. 2014) (analyzing *N.J.S.A.* 54:5–32).[11] Thus, as each purchaser makes a bid, the interest rate actually *decreases* from a statutory maximum of 18% to the final interest rate once bidding stops. *Simon v. Cronecker*, 915 A.2d 489, 497 (N.J. 2007) ("The auction works in reverse, with the person accepting the lowest interest yield rate on the tax sale certificate winning the bid.").

As in Maryland and Illinois, a tax sale certificate in New Jersey does not represent an outright conveyance. *Savage v. Weissman*, 810 A.2d 1077, 1081 (N.J. 2002). It only creates a lien interest on the property, and it is that lien interest which is sold at a tax sale. *Id.* The property's owner can redeem the property at any time before the right of redemption is foreclosed. *Simon v. Rando*, 863 A.2d 1078, 1081 (N.J. 2005). To redeem within ten days of the tax sale, the owner must pay the sum paid at the sale plus interest at the bid upon rate. N.J. Stat. Ann. § 54:5-58. To redeem ten or more days after the tax sale, the owner must pay the same sum plus the purchaser's expenses and any subsequent municipal liens. *Id.* If the property owner does not redeem the tax

---

[11] That section provides:

> The sale shall be made in fee to such person as will purchase the property, subject to redemption at the lowest rate of interest, but in no case in excess of 18% per annum. If at the sale a person shall offer to purchase subject to redemption at a rate of interest less than 1%, or at no interest, he may, in lieu of any rate of interest to redeem, offer a premium over and above the amount of taxes, assessments or other charges, as in this chapter specified, due the municipality, and the property shall be struck off and sold to the bidder who offers to pay the amount of such taxes, assessments or charges, plus the highest amount of premium.

N.J. Stat. Ann. § 54:5-32.

certificate within two years of the tax sale, the tax certificate holder may institute an action to foreclose the right of redemption.[12]  *Simon v. Cronecker*, 915 A.2d 489, 497 (N.J. 2007).  The court foreclosing the right of redemption may enter final judgment "to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser." *Princeton Office Park*, 93 A.3d at 338 (quoting N.J. Stat. Ann. § 54:5-87).  Once foreclosed, the purchaser may become the property's owner in fee simple. *Princeton Office Park*, 93 A.3d at 338.

In light of the similarities in tax sale procedure, the Court is persuaded by the reasoning in *Smith* and *GGI Properties* and concludes that a tax foreclosure sale conducted under Maryland law does not conclusively constitute reasonably equivalent value under Section 548 and requires a case-by-case factual analysis.  The Court further determines that, although the price paid to acquire a tax sale certificate may, under some circumstances, constitute reasonably equivalent value, the purchase price paid by the Defendant in this case is far too low to satisfy this element. This view takes the more flexible, case-by-case approach utilized in prior decisions of this Court that compares the value of the consideration received by the debtor with the value of the property transferred.  *See, e.g., Barton-Cotton*, 2012 WL 2803742, at *9 (requiring a totality of the circumstances analysis); *Whitney*, 2007 WL 2230063, at *5 (requiring a case-by-case analysis).

4.    Insolvency of debtor

The final element for a cause of action under Section 548 is that the Debtor must have been "insolvent on the date that such transfer was made … or became insolvent as a result of such

---

[12] Only non-municipal, individual tax certificate holders may foreclose after two years.  N.J. Stat. Ann. § 54:5-86.  If the municipality is the purchaser, then it can foreclose six months after the date of sale.  *Id.*

transfer." 11 U.S.C. § 548. The meaning of "insolvent" for purposes of Section 548 is the same as in Section 547 and, as previously stated, means "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of … property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32)(A). However, the insolvency requirement for a fraudulent transfer differs from the insolvency requirement for a preferential transfer in two material ways – there is no presumption of insolvency under Section 548 and the insolvency requirement is met if the transfer itself rendered the debtor insolvent.

Here, the parties stipulate that the Debtor was insolvent during the 90-day period before the bankruptcy filing, and the Court has determined that the transfer took place within that time period. Therefore, this requirement is met and no further analysis is required.

     5.   <u>Conclusion</u>

As the Debtor has satisfied all of the requirements for avoidance and recovery of a fraudulent transfer under Sections 548 and 550, summary judgment must be entered in favor of the Debtor on Count II. Transfer of the Property pursuant to the Redemption Order must be avoided and title must be vested in the Debtor.

     D.   <u>Application of Section 15-206 of the Maryland Commercial Law Article</u>

In Count III of the Complaint, the Debtor asserts that the transfer of his interest in the Property is avoidable under the Maryland Fraudulent Conveyance Act. More specifically, Commercial Law Section 15-206 provides in pertinent part:

> Every conveyance made … without fair consideration when the person who makes the conveyance … intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

Md. Code Ann., Comm. Law. § 15-206.

Section 15-210.1 of the Maryland Commercial Law Article is dispositive on this issue. This section states:

> A conveyance is not fraudulent as to a creditor, if, conducted in accordance with applicable law, the conveyance results from a foreclosure sale, a sale to enforce a statutory lien, a judicial sale, or a sale of property under levy.

Md. Code Ann., Comm. Law. § 15-210.1.  Neither the Motion nor the Counter-Motion addressed Count III.  Moreover, at the summary judgment hearing, the Debtor (rightfully) conceded that he could not prevail on Count III because the tax sale is a judicial sale and falls within the scope of Section 15-201.1.  Accordingly, the transfer under the Redemption Order cannot be avoided as a fraudulent conveyance under the Maryland Fraudulent Conveyance Act and judgment must be entered on Count III in favor of the Defendant as a matter of law.[13]

V.    <u>CONCLUSION</u>

For the reasons stated above, the Court concludes that the standard for summary judgment is met because there are no material facts in dispute and the Debtor is entitled to judgment as a matter of law on Counts I and II of the Complaint and the Defendant is entitled to judgment as a matter of law on Count III.  An order consistent with this memorandum opinion will be issued contemporaneously herewith.

cc:    All Parties
       All Counsel

**END OF OPINION**

---

[13] The Court recognizes that the Maryland General Assembly effectively adopted *BFP*'s premise in the Maryland Fraudulent Conveyance Act, which provides that a conveyance of property is not fraudulent if it occurred in a tax sale conducted in accordance with applicable Maryland law.  The Court declines to impose the perceived intent of the Maryland General Assembly on the application of Section 548 here.  Congress has not adopted *BFP*'s premise by adding a similar provision to the Bankruptcy Code in any of its amendments in the 28 years since the Supreme Court issued the *BFP* decision.  The Court finds Congress' failure to codify *BFP*'s ruling in the Bankruptcy Code telling but does not base its decision on the absence of such a provision.