IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MICAL RENARD TUCKER        :

_____

CHRISTOPHER BRUSZNICKI            :

     Appellant                   :

          v.              :    Civil Action No. DKC 22-2694

MICAL RENARD TUCKER,              :

     Appellee                    :

**MEMORANDUM OPINION**

Appellee Mical Renard Tucker—a Chapter 13 bankruptcy debtor—brought this adversary proceeding in the United States Bankruptcy Court for the District of Maryland to avoid the transfer of his property to Appellant Christopher Brusznicki, who purchased a tax sale certificate on Mr. Tucker's unpaid property taxes.  On October 1, 2022, United States Bankruptcy Judge Maria Ellena Chavez-Ruark granted partial summary judgment for Mr. Tucker and ordered that the transfer be avoided.  Mr. Brusznicki appealed that order. Because the facts and legal arguments are adequately presented in the briefs and record, oral argument is unnecessary.  *See* Fed.R.Bankr.P. 8012; Local Rule 105.6.  For the following reasons, the order of the bankruptcy court will be affirmed in part and vacated in part.

I.   **Background**

A.   **Maryland's Tax Sale Regime**

In Maryland, when a debtor fails to pay property taxes, the unpaid tax debt becomes a lien on the property.  Md. Code. Ann., Tax-Prop. § 14-804.  After the taxes become in arrears, the tax collector for the county in which the property is located may hold a "tax sale" on the property.  Md. Code. Ann., Tax-Prop. §§ 14-808; 14-817.  At the tax sale, prospective buyers bid to acquire a tax sale "certificate," which provides to the buyer a lien on the unpaid taxes and a potential future right to take ownership of the property if the debtor fails to satisfy the lien.  Md. Code. Ann., Tax-Prop. § 14-820.

Bidding starts at the unpaid tax amount, and the highest bidder wins.  Md. Code. Ann., Tax-Prop. § 14-817.  The winning bid—known as the "purchase price"—represents the value that the buyer would be willing to pay to acquire the property if the debtor eventually fails to satisfy the tax debt.  Md. Code. Ann., Tax-Prop. § 14-818.  However, on the day of the tax sale itself, the buyer need only pay the unpaid tax amount, "interest and penalties on the taxes," "expenses incurred in making the sale," and "the high-bid premium."  Md. Code. Ann., Tax-Prop. § 14-818(a)(1).  The full purchase price does not become due until or unless the debtor fails to redeem the property and the buyer obtains an order

foreclosing the debtor's redemption rights. Md. Code. Ann., Tax-Prop. § 14-818(a)(1).

After the tax sale, the debtor may "redeem" the property by paying "the total lien amount" and any additional "taxes, interest, and penalties paid by any holder of the certificate of sale." Md. Code. Ann., Tax-Prop. § 14-828(a). If the debtor redeems, then the buyer who purchased the tax sale certificate receives "all redemption money excluding taxes" and "surrender[s]" the certificate. Md. Code. Ann., Tax-Prop. § 14-828(c). If the debtor fails to redeem, then after six months, the buyer may bring a foreclosure action in the circuit court for the county in which the property is located. Md. Code. Ann., Tax-Prop. § 14-833. When the buyer proves that the debtor has failed to redeem, the circuit court must enter a foreclosure order which terminates the debtor's redemption rights. Md. Code. Ann., Tax-Prop. § 14-844. Until that order is entered, the Debtor retains possession and "all rights of ownership over the property." Md. Code. Ann., Tax-Prop. § 14-830(a).

Once the foreclosure order is entered, the buyer is required to pay to the tax collector "the balance of the purchase price . . . in full, together with all taxes and interest and penalties on the taxes accruing after the date of sale." Md. Code. Ann., Tax-Prop. § 14-818(a)(2). The collector then must distribute "[a]ny balance over the amount required for the payment of taxes,

interest, penalties, and costs of sale" to "the person entitled to the balance." *See* Md. Code. Ann., Tax-Prop. § 14-818(a)(4)(1). After the buyer makes this payment, the tax collector must deliver to the buyer a deed for the property. Md. Code. Ann., Tax-Prop. §§ 14-831; 14-847(a)(1).

### B.   Case Background

In June 2020, Appellee Mical Renard Tucker ("the Debtor") had not paid $784.65 in property taxes. (ECF Nos. 3-1, at 2; 3-9). The Prince George's County tax collector held a tax sale on the Debtor's property. (ECF Nos. 3-9). Appellant Christopher Brusznicki ("the Buyer") submitted the winning bid at the tax sale and acquired a tax sale certificate. (ECF No. 3-9). The winning bid was $16,283.10, but on the date of the sale, the Buyer paid only $947.91 ($784.65 in unpaid taxes plus a high-bid premium of $163.26). (ECF No. 3-9). The tax sale certificate stated in part:

> The property described herein is subject to redemption. Upon redemption, the holder of the certificate will be refunded the sums paid on account of the purchase price together with interest . . . thereon . . . . The balance due on account of the purchase price and all taxes, together with interest and penalties thereon, accruing subsequent to the date of sale, must be paid to the Collector before a deed can be delivered to the purchaser. After November 22, 2020, a proceeding can be brought to foreclose all rights of redemption in the property.

(ECF No. 3-9).

4

After the Debtor failed to redeem, the Buyer filed a
foreclosure action in the Circuit Court for Prince George's County.
(ECF No. 3-13, at 4).  On August 3, 2021, the circuit court issued
a foreclosure order.  (ECF No. 3-10).  That order "forever barred
and foreclosed" the Debtor's "rights of redemption."  (ECF No. 3-
10, at 1).  It also stated that "an absolute and indefeasible
estate in fee simple . . . hereby is vested in" the Buyer "upon
issuance of tax deed."  (ECF No. 3-10, at 2).  Finally, the order
"directed" the "Treasurer for Prince George's County" to "execute
and deliver" to the Buyer "a good and sufficient Deed conveying
said property."  (ECF No. 3-10, at 2).

On October 1, 2021—less than two months after the circuit
court entered the foreclosure order—the Debtor filed a bankruptcy
petition under Chapter 13 of the Bankruptcy Code.  (ECF No. 3-13,
at 4).  One month later, the Debtor filed the complaint in this
case, seeking to "avoid" the circuit court's "order foreclosing
the Debtor's right of redemption."  (ECF No. 3-1).  The complaint
raised three grounds for avoidance of the foreclosure order: (1)
"avoidance of preferential transfer" under Section 547 of the
Bankruptcy Code, *see* 11 U.S.C. § 547, (2) "avoidance . . . of
fraudulent transfer[]" under Section 548 of the Bankruptcy Code,
*see* 11 U.S.C. § 548, and (3) avoidance under Md. Comm. Law Code
§ 15-206 and Section 544 of the Bankruptcy Code, *see* 11 U.S.C.
§ 544.

Around the same time that the Debtor filed this avoidance action, the Buyer filed a "motion seeking relief" in the Debtor's main bankruptcy case. *See In re Tucker*, No. 21-16213, ECF No. 16, at 1-3 (Bankr.D.Md. Oct. 29, 2021). In that motion, the Buyer stated that the Debtor's bankruptcy petition had "automatic[ally] stay[ed]" certain legal proceedings related to the Debtor's assets, *see* 11 U.S.C. § 362(a), and the Buyer asked the bankruptcy court to "lift the automatic stay" to allow the Buyer to pay the full purchase price and "unite legal and equitable title to the property." *Id.* The court deferred ruling on that motion until the Debtor's avoidance action "is resolved." *See In re Tucker*, No. 21-16213, ECF No. 28, at 1-2 (Bankr.D.Md. Dec. 10, 2021). The Buyer has thus apparently not yet paid the full purchase price, and Prince George's County has not yet delivered the deed to the Buyer. (ECF No. 3-13, at 6).

The Debtor and Buyer then filed opposing motions for summary judgment in this avoidance action. (ECF Nos. 3-7; 3-8). On October 1, 2022, the bankruptcy court issued an opinion granting summary judgment for the Debtor on Count I (the Section 547 claim) and Count II (the Section 548 claim), and granting summary judgment for the Buyer on Count III. (ECF No. 3-13). The bankruptcy court ordered that "the transfer of the property . . . is hereby avoided," and "the Debtor is hereby authorized to execute and record such documents as are necessary to ensure that the Land

Records for Prince George's County reflect that he is the owner and record title holder of the Property."   (ECF No. 3-14, at 2). The Buyer appealed the bankruptcy court's decision, arguing that the court incorrectly granted summary judgment for the Debtor on the Section 547 and Section 548 claims.   (ECF No. 5).   The Debtor responded, (ECF No. 6), and the Buyer replied, (ECF No. 7).

## II.   Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.   *In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006).   "A finding of fact is clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed."   *In re Broyles*, 55 F.3d 980, 983 (4th Cir. 1995) (internal quotation marks omitted).   A district court may affirm a bankruptcy court's summary judgment order based on "any . . . ground that [the appellee] urged as a basis for the judgment in the bankruptcy court."   *Hager v. Gibson*, 109 F.3d 201, 208 (4th Cir. 1997).   The bankruptcy court's decision "must be affirmed if the result is correct," even if the bankruptcy court "relied upon a wrong ground or gave a wrong reason."   *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (internal quotation marks omitted).

A court may grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled

to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Fed.R.Bankr.P. 7056 (making Rule 56 applicable to "adversary proceedings," including avoidance actions).  A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)) (alteration in original).  The court must construe the facts that are presented in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. Analysis

The bankruptcy court granted summary judgment in favor of the Debtor on two claims: (1) an avoidance claim under Section 547 of the Bankruptcy Code, which applies to so-called "preference[]" transfers, *see* 11 U.S.C. § 547, and (2) an avoidance claim under Section 548 of the Bankruptcy Code, which applies to "[f]raudulent transfers," *see* 11 U.S.C. § 548.  While Sections 547 and 548 "require different analyses" on the merits, success on a claim under either Section produces the same result: "the unwinding" of

a property transfer that occurred under state law at some point before the Debtor filed for bankruptcy. *See In re Hackler and Stelzle-Hackler*, 938 F.3d 473, 476 (3d Cir. 2019). Specifically, if a party succeeds under either Section, then the challenged transfer is "nullif[ied]," *see In re Kunz*, 489 F.3d 1072, 1075 (10th Cir. 2007), and the party that brought the avoidance action "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee." 11 U.S.C. § 550(a)(1). The bankruptcy court held that the Debtor's success on each Section provided an independent ground to avoid the circuit court foreclosure order. (ECF No. 3-13, at 27, 36). On appeal, the Buyer argues that the bankruptcy court was incorrect as to the claims under both Sections.[1]

---

[1] Sections 547 and 548 each provide a cause of action to the "trustee" of the bankruptcy estate, not the debtor. *See* 11 U.S.C. §§ 547(b); 548 (a)(1). Another provision of the Bankruptcy Code, *see* 11 U.S.C. § 522(h), permits a debtor to bring these avoidance claims when five elements are met: "(1) the debtor could have exempted the [transferred] property . . . ; (2) the transfer would have been avoidable by the trustee; (3) the trustee has not attempted to avoid the transfer; (4) the transfer was not a voluntary transfer of property by the debtor; and (5) the property was not concealed by the debtor." *In re Smoot*, 237 B.R. 875, 880 (Bankr.D.Md. 1999). Here, the trustee has not attempted to avoid the foreclosure order, and the Debtor's Schedule C asserts an exemption in the property. (ECF No. 3-13, at 5). Noting these facts, the bankruptcy court found that the Debtor has standing. (ECF No. 3-13, at 5 n.3). The Buyer did not challenge the Debtor's standing below, and he does not do so on appeal.

## A.   Section 547 Claim

Under Section 547, a party may avoid certain kinds of "preference[]" transfers that occurred "on or within 90 days before" the debtor filed for bankruptcy.  11 U.S.C. § 547(b)(4). The only issue on appeal regarding this section is whether the transfer that the Debtor seeks to avoid occurred within the 90-day period.[2]  The Debtor argues that the transfer occurred when the Circuit Court for Prince George's County issued the foreclosure order, which was less than two months before the Debtor filed for bankruptcy.  (ECF No. 6, at 14).  The Buyer argues that the transfer occurred at the tax sale—more than two years before the Debtor filed for bankruptcy.  (ECF No. 5, at 20).

The Bankruptcy Code defines "transfer" as:

> (A) the creation of a lien; (B) the retention
> of title as a security interest; (C) the
> foreclosure of a debtor's equity of
> redemption; or (D) each mode, direct or

---

[2] For a transfer to be avoided under Section 547, "[t]he transfer must have been: (1) of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) made while the debtor was insolvent; (5) made on or within ninety days of the filing of the bankruptcy petition; and (6) it must enable the creditor to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case under the Bankruptcy Code." *In re Railworks Corp.*, 760 F.3d 398, 402 (4th Cir. 2014) (internal quotation marks omitted); *see* 11 U.S.C. § 547(b)(1)-(5).  In granting summary judgment for the Debtor, the bankruptcy court found that all six elements were satisfied.  (ECF No. 3-13, at 11-27).  The only element that the Buyer has challenged on appeal is whether the transfer occurred on or within 90 days before the Debtor filed the bankruptcy petition.  (ECF No. 5, at 14-27).

> indirect, absolute or conditional, voluntary
> or involuntary, of disposing of or parting
> with . . . (i) property; or (ii) an interest
> in property.

11 U.S.C. § 101(54).  Of particular relevance in this case, "the
foreclosure of a debtor's equity of redemption" is a "transfer"
under the statute.   11 U.S.C. § 101(54)(C).   Here, the Debtor's
"equity of redemption" in the property was foreclosed when the
circuit court entered the foreclosure order.   Before that order
was entered, the Debtor retained both the right to redeem and "all
rights of ownership over the property."  Md. Code. Ann., Tax-Prop.
§ 14-830(a).   The order states that it "foreclosed" the Debtor's
"rights of redemption."   (ECF No. 3-10, at 1).   By the statute's
plain text, that foreclosure of the Debtor's redemption rights was
a "transfer."   That transfer occurred "within 90 days before" the
Debtor filed for bankruptcy, so the Debtor may sue under Section
547 to avoid it.   11 U.S.C. § 547(b)(4).

Of course, it is possible that a transfer of some kind also
occurred at the tax sale in June 2020.   After all, the tax sale
certificate gave the Buyer a lien on the Debtor's unpaid taxes.
*See* 11 U.S.C. § 101(54)(A), (D) (defining "transfer" to include
the "creation of a lien" and "each mode . . . of . . . parting
with . . . an interest in property").   At most, however, this means
that property transfers occurred at two different times in this
case: (1) when the Buyer obtained the lien under the tax sale

certificate, and (2) when the foreclosure order terminated the Debtor's redemption rights.  The Debtor may be too late to avoid the earlier transfer under the tax sale certificate, but he did not bring this suit to avoid *that* transfer.  Indeed, he did not ask the bankruptcy court to revoke the lien or the certificate.  Rather, he seeks to avoid "the order foreclosing the Debtor's right of redemption."  (ECF No. 3-1, at 2-3).  That order was entered well within the 90-day statutory period.

Seeking to evade this conclusion, the Buyer asserts that his position is supported by policy arguments, the Supreme Court's holding in *BFP v. Resol. Tr. Corp.*, 511 U.S. 531 (1994), the Bankruptcy Code's legislative history, and several out-of-circuit federal court opinions.  (ECF No. 5, at 15-27).

Initially, the Buyer argues that the Debtor's position would "force the tax sale industry into a proverbial meat grinder" because once the order is entered, a buyer is liable for the property's full purchase price, property taxes, and homeowner's fees.  (ECF No. 5, at 15-18).  At its core, the Buyer's argument seems to be that tax sale bidders would prefer to resolve avoidance actions before they must pay full price and assume the full obligations of ownership.  That potential burden, however, is inherent in Congress's creation of avoidance actions writ large.  The point of an avoidance action is to "unwind[]" a property transfer *after* it occurs.  *In re Hackler*, 938 F.3d at 476.  Of

12

course, buyers in every case would prefer to resolve the risk of
such claims before they are required to pay for the property, but
that is not how an avoidance action works.  As one federal circuit
court explained, avoidance actions "necessarily impose[] some
degree of uncertainty on all transfers of property, including real
estate"—yet courts must still apply the Bankruptcy Code as written,
even when it compels results that "make purchases of . . . tax
liens marginally less attractive as investments."  *In re Smith*,
811 F.3d 228, 239-40 (7th Cir. 2016).[3]

Next, the Buyer argues that his position is supported by *BFP
v. Resol. Tr. Corp.*, 511 U.S. 531 (1994), in which the Supreme
Court stated that the Bankruptcy Code should generally be
"construed to adopt, rather than to displace, pre-existing state
law." *Id.* at 544-45. The Buyer asserts that the Debtor's position
would interfere with Maryland's interest in "mak[ing] title to
real property secure" and would thus contradict "the principles of
federalism" applied in *BFP*.  (ECF No. 5, at 18-20).   In *BFP*,
however, the Court did not hold that state law property interests
prevail over the Bankruptcy Code's plain text.  Rather, the Court
considered federalism principles in deciding between competing

---

[3] *See also Gunsalus v. County of Ontario, NY*, 37 F.4th 859,
866 (2d Cir. 2022) (noting that while avoidance actions may
"introduce a degree of disruption" into a state's tax sale system,
"that disruption arises from . . . a Bankruptcy Code fashioned by
Congress to afford relief to debtors," which, "[b]y its very
nature, . . . upsets common and state law property interests").

interpretations of an ambiguous statutory term. *See BFP*, 511 U.S. at 544-45. One of those interpretations "would have [had] a profound effect upon . . . traditional state regulation[s]," and the Court assumed that Congress would not have intended such an effect "absent clearer textual guidance." *Id.* at 543, 544-45. The Court clarified, however, that "where the meaning of the Bankruptcy Code's text is itself clear, . . . its operation is unimpeded by contrary state law or prior practice." *Id.* at 546.

Here, the statute's text is unambiguous: the "foreclosure of a debtor's equity of redemption" is a "transfer." The Buyer does not argue that the text is unclear or present an alternate reading of the statutory definition—indeed, he does not even try to explain how his position fits the statute's text. Thus, far from invoking federalism to resolve ambiguity (as in *BFP*), the Buyer instead asks the court to ignore plain text based on bare policy arguments. Yet "no amount of policy-talk can overcome a plain statutory command." *Niz-Chavez v. Garland*, 141 S.Ct. 1472, 1486 (2021); *see also In re Hackler*, 938 F.3d at 478-479 (noting that *BFP* considered federalism only as a means of interpreting a "disputed" statutory term, and reasoning that it "puts the cart before the horse" to argue that *BFP* requires courts to decide bankruptcy cases based on free-floating federalism concerns when the statute's text is "clear").

The Buyer's reliance on legislative history is also misplaced. The Buyer notes that Congress amended the Bankruptcy Code's definition of "transfer" in 1984 to add "the foreclosure of a debtor's equity of redemption," and he argues that his position is supported by a congressional colloquy related to that amendment. (ECF No. 5, at 21). That legislative history, however, is less persuasive than the Buyer suggests. As explained in a contemporary opinion the Buyer cites, (*see* ECF No. 5, at 23), the 1984 amendment arose in response to a split among federal circuit courts about whether mortgage foreclosure sales—not tax lien sales—could be avoided under the Bankruptcy Code. *See In re Verna*, 58 B.R. 246, 250-251 (Bankr.C.D.Cal. 1986). To address the split, Congress drafted several changes to the Code, including an amendment that added the "equity of redemption" language to the statutory definition of "transfer." *Id.* at 250. One lawmaker, however, objected to resolving the circuit split. *Id.* Thus, several Senators "inserted into the Congressional Record a scripted colloquy, which did not occur on the Senate floor," *id.*, in which they stated that "no provision of the bankruptcy bill . . . was intended to intimate any view . . . regarding the correctness" of the courts on each side of the split. 130 Cong.Rec. S.13771-S.13772 (No. 131, Pt. II, October 5, 1984). Congress then removed from the bill some—but not all—of the proposed changes. *In re Verna*, 58 B.R. at 250. The revised definition of "transfer" was

among the changes that Congress left in place, and it became part of the bill that was ratified into law. *Id.*

It is unclear how this legislative history changes the outcome of this case, and the Buyer has failed to explain why Congress's mixed signals regarding a circuit split about *mortgage* foreclosure sales requires the court to ignore the statute's plain text in a *tax* sale case. Federal courts use legislative history to "illuminate ambiguous text," not to "muddy clear statutory language." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011). When, as here, the legislative history "is more conflicting than the text is ambiguous," courts generally do not use that history to "create" ambiguity where none otherwise exists. *Id.* at 574 (internal quotation marks removed).

What is more, as the Buyer himself recognizes, following the amendment, many federal courts—including the Supreme Court in *BFP*—understood the revised definition of transfer to include mortgage foreclosure sales. (ECF No. 5, at 23 (collecting cases)). The Buyer seems to believe that this outcome supports his argument that the property was transferred at the tax sale, but it actually cuts the other way. Courts found that a mortgage foreclosure sale is a "transfer" because in the mortgage foreclosure context, the sale itself generally "forecloses th[e] equity of redemption." *In re Verna*, 58 B.R. at 250 n.6. By contrast, in Maryland's tax sale system, it is the foreclosure order—*not* the tax sale—that

terminates the redemption right. As the bankruptcy court explained, the foreclosure order is the "better comparison" to the mortgage sale because the order "terminated the Debtor's right to redeem," much like a mortgage sale "terminates a homeowner's right to cure any default." (ECF No. 3-13, at 16).

The Buyer also relies heavily on *In re Hull*, 591 B.R. 25 (Bankr.D.Or. 2018), a case in which a federal bankruptcy court held that no "transfer" occurred when a debtor's "redemption rights expired." *Id.* at 26-30. That holding, however, rested on unique considerations of Oregon law that do not apply in this case. In Oregon, when a homeowner falls behind on property taxes, the county may obtain a foreclosure order which "vests in the county title to the property." *Id.* at 28 (quoting ORS 312.270). From that point forward, the county legally owns the property, but the debtor may continue to live there for a two-year redemption period while he or she attempts to pay off the tax debt. *Id.* The *Hull* court held that the redemption right in Oregon's tax sale system was not "equitable" under Oregon common law, and thus it did not "constitute a foreclosure of an equity of redemption under § 101(54)(C)." *Id.* at 29-30. The court explained that under Oregon common law, "equitable redemption only exists until" a court enters an order that "divest[s] [the debtor] of [his or her] ownership rights," and that any redemption right that lasts beyond the loss of ownership is not an "equitable right of redemption."

*Id.* at 28-30 (quoting *Land Associates, Inc. v. Becker*, 294 Or. 308, 312 (1982)). Thus, because Oregon's system permits a redemption period for two years *after* a foreclosure order terminates the debtor's ownership rights, the end of that non-equitable redemption period is not a "transfer." *Id.* at 29-30.

That holding provides little support for the Buyer's position in this case. Whatever Oregon common law might say about equitable redemption, the Buyer provides nothing to suggest that under Maryland common law, the Debtor's redemption right was not "equitable." What is more, in Maryland's tax sale system, a debtor's redemption right does *not* last beyond the time where the debtor loses ownership of the property. Rather, after the tax sale, a debtor retains both the right to redeem and "all rights of ownership" up until the foreclosure order is entered. Md. Code. Ann., Tax-Prop. § 14-830(a). That order then simultaneously terminates ownership and redemption rights. Nothing in *Hull* suggests that such an order is not a "transfer."

Indeed, in explaining its holding, the *Hull* court seemed to suggest that a foreclosure order like the one in this case *would* be a "transfer." It explained that if a buyer at first acquires only a "lien on the property" and then later acquires full ownership after the debtor fails to satisfy the lien, then there are "two transfers in [the] case." *Hull*, 591 B.R. at 29. The "first occur[s]" when the lien is created, and "the second

18

occur[s]" when the debtor "simultaneously" loses title and redemption rights. *Id.* at 29. Just so here: a transfer occurred when the foreclosure order "simultaneously" terminated the Debtor's rights of ownership and redemption.

Finally, the other two federal bankruptcy opinions on which the Buyer relies are even less persuasive. *See In re Edgewater Med. Ctr.*, 373 B.R. 845 (Bankr.N.D.Ill. 2007); *In re Jermoo's, Inc.*, 38 B.R. 197 (Bankr.W.D.Wisc. 1984). Neither of those cases involved the foreclosure of a right to redeem. Rather, one case involved a claim to avoid a party's failure to exercise an option to extend a lease, *see Edgewater*, 373 B.R. at 852-53, and the other involved a claim to avoid a party's termination of a franchise contract, *see Jermoo's*, 38 B.R. at 198. One of those cases was also decided *before* Congress amended the statutory definition of "transfer" to include "the foreclosure of a debtor's equity of redemption." *See id.* at 202-03 (citing an outdated definition of "transfer"). Relying on these cases, the Buyer argues that the foreclosure of the Debtor's redemption right is "analogous to the expiration of an option," (ECF No. 5, at 27), but that view ignores the crucial difference: "the foreclosure of a debtor's equity of redemption" is listed in the statutory definition of "transfer"; the "expiration of an option" is not.

19

**B.   Section 548 Claim**

Under Section 548, a party can avoid certain "fraudulent transfer[s]" that occurred before a debtor filed for bankruptcy. 11 U.S.C. § 548.   This provision covers "not only transfers infected by actual fraud," but also "so-called constructively fraudulent transfers," *see BFP*, 511 U.S. at 535, which may occur when "the debtor . . . receive[s] less than a reasonably equivalent value in exchange" for the transferred property.   11 U.S.C. § 548(a)(1)(B).[4]  A debtor receives "reasonably equivalent value" when he or she obtains value that is "approximately equivalent" to the value of the transferred property "at the time" it was transferred.   *See BFP*, 511 U.S. at 539 n.4, 546-49.   To determine those respective values and make that comparison, the United States Court of Appeals for the Fourth Circuit examines "all the

---

[4] A debtor may avoid a transfer as constructively fraudulent under Section 548 by proving that: (1) the challenged transfer occurred "on or within 2 years before" the bankruptcy petition was filed, (2) the debtor "received less than a reasonably equivalent value in exchange for such transfer," and (3) the debtor "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer."  11 U.S.C. § 548(a)(1)(B). In granting summary judgment for the Debtor, the bankruptcy court held that all three elements were satisfied.   (ECF No. 3-13, at 27-36).   On appeal, the Buyer mainly argues that the bankruptcy court incorrectly ruled on the "reasonably equivalent value" element.  (ECF No. 5, at 28-35)  He also asserts that the transfer occurred outside of Section 548's two-year timeline because he believes that the transfer occurred at the June 2020 tax sale. (ECF No. 5, at 28-29).   The court has already found, however, that the transfer the Debtor seeks to avoid is the August 2021 foreclosure order.

circumstances surrounding the suspect transfer," including the property's "fair market value," "the good faith of the transferee," and "whether the sale was an arm's length transaction." *In re Morris Commc'ns N.C., Inc.*, 914 F.2d 458, 467 (4th Cir. 1990) (internal quotation marks omitted).

The Supreme Court, however, has a created a special rule for determining "reasonably equivalent value" in cases involving mortgage foreclosure sales. *See BFP*, 511 U.S. at 537-49. In *BFP*, the Court held that the value of a property sold at a mortgage foreclosure sale is "the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *Id.* at 545. The court explained that a property is "simply worth less" when it is sold at foreclosure than when it is sold on the open market, largely because a foreclosure sale is a "forced" transaction that lacks market conditions beneficial to property value, such as "negotiation," "mutual agreement" and the time needed to find a willing buyer. *Id.* at 538-539 (internal quotation marks omitted). Thus, in the mortgage foreclosure context, a property's "fair market value" "has no applicability" to its value "at the time it is sold"—that is, at the time of the foreclosure sale. *Id.* at 537-39, 548-49. Rather, the "only legitimate evidence" of the property's value at the time of the transfer is the winning bid at the sale. *Id.* at 548-49. Because the debtors' estate in *BFP*

received the value of the winning bid at the foreclosure sale in exchange for the property, it received "reasonably equivalent value." *Id.*

The Buyer urges the court to extend *BFP* to tax sales in Maryland; he argues that the "reasonably equivalent value" of a house involved in a Maryland tax sale is "the price received at the [tax] sale." (ECF No. 5, at 31-35). It is unclear what the Buyer means by that. Under Maryland law, on the date of the tax sale itself, the highest bidder need only pay the unpaid tax amount plus a high-bid premium; the full purchase price that comprises the winning bid is not due until months or years later when the foreclosure order issues. Md. Code. Ann., Tax-Prop. § 14-818(a). Thus, the price actually "received at the sale" is merely the price the bidder pays to acquire a tax lien—not the price paid to acquire the property. That price is certainly not "reasonably equivalent value"—indeed, under *BFP*, the price paid at a mortgage foreclosure sale is relevant because it represents "the *property's* value at the time it is sold." *See* 511 U.S. at 548-49 (emphasis added). By contrast, the amount the Buyer paid at the tax sale here has nothing to do with the *property's* value and instead represents the value of the tax debt.[5]

---

[5]  *See In re Smith*, 811 F.3d at 238 (holding that a debtor did not receive "reasonably equivalent value" when the price paid at the tax sale was merely "the amount needed to extinguish the tax delinquency," because that amount "bears no relationship to

On the other hand, the Buyer may mean to argue that the "reasonably equivalent value" of the transferred property should be the value of the winning *bid* at the tax sale—that is, the price that a bidder promises to pay to later obtain the property if a foreclosure order is entered. Here, that bid was $16,283.10. (ECF No. 3-9). That position finds support in several federal cases. As explained by the United States Court of Appeals for the Seventh Circuit, multiple federal courts have held that the high bid at a tax sale can constitute "reasonably equivalent value" when a state uses a tax sale system known as the "overbid method." *In re Smith*, 811 F.3d at 237-240 (citing *In re Grandote Country Club Co.*, 252 F.3d 1146, 1152 (10th Cir. 2001); *T.F. Stone Co. v. Harper*, 72 F.3d 466, 471 (5th Cir. 1995)). That method appears nearly identical to the one Maryland uses:

> [T]he bidding price begins at the total amount of taxes and interest due, and potential buyers then offer higher bids up to the total price they are willing to pay in return for (eventual) fee simple title. . . . A redemption period typically follows, during which the delinquent taxpayer . . . may pay off the tax debt and reclaim the property. If

---

the value of the property itself"); *Gunsalus*, 37 F.4th at 866 (holding that debtors did not receive "reasonably equivalent value" when they lost their property in exchange for "the amount of the tax debt that led to the foreclosure" because that amount "bears no relation" to the property's value); *In re Lowry*, No. 20-1712, 2021 WL 6112972, at *4 (6th Cir. Dec. 27, 2021) (holding that a debtor did not receive "reasonably equivalent value" when the city bought his property for "the amount of outstanding taxes due" because that amount "had no apparent relation to the value of the property").

> the property is not redeemed, the winning
> bidder may bring an action for quiet title to
> the property.

*In re Smith*, 811 F.3d at 237.

Because "property is sold at an auction in which the sale price may rise well above the amount of the tax lien, toward the fair market value of the property subject to the forced sale," these "overbid method" sales "are likely to generate bids more reasonably equivalent to the value of the underlying property." *Id.* at 240. If that reasoning applies to this case, the full $16,238.10 purchase price represents the winning bid at an auction conducted using the overbid method, which other courts have held to constitute "reasonably equivalent value." *See id.* at 240 ("[T]he Fifth and Tenth Circuits . . . have held that *BFP* applies to the issue of reasonably equivalent value in Oklahoma and Colorado tax sales using the overbid method.") (collecting cases).

The bankruptcy court, however, did not consider whether the full purchase price would constitute reasonably equivalent value, apparently because it believed that the Debtor has not received a value approximating the full purchase price. Rather, the bankruptcy court found that the Debtor has received only "the satisfaction of tax liens against the Property totaling $784.65." (ECF No. 3-13, at 31). The Buyer has indeed not yet paid the full purchase price, but only because the bankruptcy court would not lift the automatic stay and allow the Buyer to do so. With that

24

payment not yet made, the bankruptcy court's Section 548 analysis rested on the premise that the Debtor has received no value beyond the satisfaction of his original tax debt.  (ECF No. 3-13, at 31).

That analysis, however, misunderstands the value that the Debtor has already received under Maryland law.  Indeed, once a foreclosure order is entered, the tax sale buyer is required to pay to the tax collector "the balance of the purchase price . . . in full," and the collector must distribute that payment to "the person entitled to the balance."  *See* Md. Code. Ann., Tax-Prop. § 14-818(a).  Maryland courts have interpreted the "person entitled to the balance" to mean any party that owned a legal "interest" in the property before it was transferred and was a "defendant[] in the . . . proceedings foreclosing the rights of redemption."  *See Kona Props., LLC v. W.D.B. Corp., Inc.*, 224 Md.App. 517, 558-59, 562 (2015).  The Debtor fits that definition.  What is more, when a buyer does not pay full price upon entry of the order, the debtor may sue the buyer to obtain a "money judgment" for the portion of the purchase price to which the debtor is "entitled."  *Id.* at 551-55; *Hardisty v. Kay*, 268 Md. 202, 212-13 (1973).

In other words, while the purchase price has not technically been paid, the Debtor is already legally "entitled" to his portion of it.  Md. Code. Ann., Tax-Prop. § 14-818(a)(4)(1).  That legal entitlement is valuable—and it certainly counts as value received by a debtor when determining "reasonably equivalent value" under

Section 548.  *See, e.g.,* In re Chomakos, 69 F.3d 769, 771 (6th Cir. 1995) (holding that a "legally enforceable" right to future payment constitutes value received by a debtor under the "reasonably equivalent value" analysis).   Thus, the bankruptcy court was incorrect to find that the Debtor has only received the satisfaction of a $784.65 tax lien.  Because the bankruptcy court improperly focused its analysis only on the satisfaction of the tax lien, the part of its order that grants summary judgment to the Debtor on the Section 548 claim will be vacated.

This court, however, will not resolve whether the full purchase price should be deemed the value of the property at the time of the transfer—and thus whether the value received by the Debtor is "reasonably equivalent"—because the ultimate result ordered by the bankruptcy court may be affirmed without resolution of the Section 548 claim.  When a bankruptcy court grants summary judgment based on "several legal theories as alternative grounds for [the same] recovery," the reviewing court may affirm the judgment on one independent ground and decline to resolve the others.   *Hager*, 109 F.3d at 211 n.3 (where a trustee sought to recover the same property interest under both "the avoidable preference provisions of § 547(b)" and "the turnover provisions of § 542(a)," the Fourth Circuit held that "the Trustee is entitled under § 547(b) to avoid the transfer," and "[h]aving so decided,

we need not consider whether the . . . [same property] might be recoverable under the turnover provisions of § 542(a)").[6]

Here, the bankruptcy court found that the Debtor's success on each claim independently required the same result: "[t]ransfer of the Property pursuant to the Redemption Order must be avoided and title must be vested in the Debtor." (*See* ECF No. 3-13, at 27, 36 (using the same language to describe the result mandated by success on each claim)).  This court has already found that the bankruptcy court correctly granted summary judgment for the Debtor on his Section 547 claim, and that conclusion alone requires affirmance of the bankruptcy court's judgment avoiding the foreclosure order and vesting title in the Debtor.

## IV.  Conclusion

The order of the bankruptcy court granting summary judgment will be affirmed in part and vacated in part.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[6]   *See also In re Sherman*, 67 F.3d 1348, 1355 n.7 (8th Cir. 1995) ("Because we affirm the bankruptcy court's decision that the transfer . . . is avoidable under § 548(a), we do not reach its alternative holding that the transfer . . . is an avoidable preference under § 547."); *In re Gallo*, 539 B.R. 88, 95 n.3 (Bankr. E.D.N.C. 2015) ("Because the court finds avoidance under § 547(b) appropriate, it is not necessary to reach the trustee and debtor's second counterclaim for avoidance pursuant to § 548.")